UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAHEEM QUAASIM SHERROD,**<br><br>   **Plaintiff,**<br><br>  v.<br><br>**CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br><br>   **Defendant.** | Civ. No. 2:14-cv-1143 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

 Plaintiff Raheem Sherrod challenges a final determination by the Commissioner of Social Security (the "Commissioner") partially denying his Title II and Title XVI applications for disability insurance benefits and supplemental security income. For the reasons that follow, the Commissioner's decision is **VACATED AND REMANDED** for reconsideration consistent with the Court's opinion.

 **I. LEGAL STANDARDS**

 **A. The Five–Step Sequential Analysis**

 Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work ("PRW"). *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the

1

burden of proof at each of these first four steps.  At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404 .1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91–92 (3d Cir.2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir.1999).  The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir.2000).  Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir.2004) (citation omitted).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (*citing* 42 U.S.C. § 405(g)).

## II. BACKGROUND

Plaintiff Raheem Sherrod is a fifty-six year-old resident of Newark, New Jersey, who seeks a finding of disability due to disc problems in his neck and back, Hepatitis C, anxiety, and high blood pressure. Transcript (Tr.) at 61.  He has a GED and previously was employed as a truck driver and counselor at a homeless shelter. Tr. 19.  He lives in Newark with his mother and his son.  Tr. 17.

On August 19, 2010, Sherrod filed for a period of disability and disability insurance benefits under Title II, and for supplemental security income ("SSI") under Title XVI.  Tr. 25. In both applications, Sherrod alleged disability since December 31, 2007.  Tr. 130-35.

After holding a hearing, the ALJ issued a decision denying Sherrod's applications for benefits.  Tr. 9.   Specifically, the ALJ found that, subject to certain non-exertional restrictions, Sherrod's residual functional capacity ("RFC") enabled him to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).  Tr. 16.  The ALJ further concluded that there exists significant jobs in the national economy that Sherrod can perform.  Tr. 20.

The Appeals Council denied Sherrod's request for review. Tr. 1.  This appeal followed.

**A. Summary of the Record**

The following is a summary of the administrative record, organized according to Sherrod's alleged impairments.

*a. Disc Problems in Neck and Back*

The bulk of the record concerns Sherrod's neck and back problems. Dr. Gautam Sehgal's neurological consultation from 2006 showed lumbar radiculopathy, diffuse muscle spasms, tenderness, and multiple disc herniations. Tr. 197-200. Notes from Amrish Patel, M.D., indicate that Sherrod experienced muscle spasms and weakness in his lower extremities. Tr. 201-02. An MRI from January 2006 also shows a posterior disc herniation compressing the thecal sac. Tr. 202. Treatment notes from the Essex Valley Spine Center also indicate back muscle spasms, tenderness, and disc herniation. Tr. 207-12. MRIs from 2006 revealed degenerative disc disease, compression of thecal sacs, impingement and compression on certain nerve roots, and normal spinal alignment. Tr. 213-223. In 2010, Sherrod underwent further MRIs, which revealed disc bulges, nerve root impingement, bilateral facet disease, and nueroformanial stenosis. Tr. 236-37.

A 2010 Department of Labor Report noted that Sherrod walked with a normal gait, was capable of fine and gross movements in both hands, and suffered from no sensory or motor deficit. Tr. 238. X-rays taken in connection with that report found no significant abnormalities. Tr. 243. An MRI from 2012 revealed multiple disc bulges. Tr. 363.

After reviewing the relevant medical history, particularly with respect to Sherrod's back issue, medical consultant Dr. Nikolaos Galakos, M.D. concluded that Sherrod was capable of lifting and/or carrying 20 pounds occasionally, lifting and/or carrying 10 pounds frequently, and standing, sitting and/or walking six hours a day. Dr. Galakos further noted that Sherrod was capable of occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 246-253.

At the hearing, Sherrod testified that he takes Percocet for his back pain. Tr. 47. He further testifies that his spasms cause his body to lock and stiffen. Tr. 49. However, Sherrod also stated that he can take his cousin to the park for walks. Tr. 49.

*b. Hepatitis C and High Blood Pressure*

Notes from the Wallington Wellness Center indicate that Sherrod suffers from and receives medication for Hepatitis C. Tr. 317, 328, 42-43. Records from the Heart Center of the Oranges also show a diagnosis of coronary heart disease and hypertension. Tr. 285-289.

3

*c. Anxiety*

A report from the New Jersey Department of Labor notes that Sherrod complains of anxiety, which results in him feeling hot, nervous, scared, and agitated.  Tr. 238.  A consultative psychiatric evaluation conducted by Dr. Paul Fulford in 2011 indicated that speech, thinking, and concentration were clear.  It further noted that Sherrod reported being extremely depressed and that his judgment appeared to be impaired.  Tr. 256-57.  The record shows that despite these limitations, as of 2010 Sherrod was capable of cleaning his room, doing laundry, and using public transportation.  Try. 265, 173-74.  At the hearing, Sherrod testified that he takes Xanax for his anxiety and that he does not like to be around people.  Tr. 43.  His aversion to social interaction prevents him from attending mosque services.  Tr.  51-52. He further testified that certain medications prevent him from keeping food down.  Tr. 45.

**B. The ALJ's Decision**

At step one, the ALJ found that Sherrod had not engaged in substantial gainful activity since the alleged onset date of his disability.  Tr. 14.  At step two, the ALJ concluded that Sherrod had the following severe impairments: a disorder of the back, Hepatitis C, anxiety, and hypertension.  Tr. 14.  The ALJ found the impairments to be severe under the Regulations because "they are medically determinable impairments which, when considered either individually or in unison, significantly limit [Sherrod's] mental and physical abilities to do one or more basic work activities."  Tr. 14.

At step three, the ALJ concluded that Sherrod does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Specifically, the ALJ found that Sherrod's "back disorder does not rise to the level of meeting the spinal stenosis, nerve root, or spinal cord compression requirements of medical listing 1.04."  Tr. 15.  Similarly, the ALJ found that Sherrod's mental impairments did not meet or medically equal the criteria of listing 12.04.  In making this determination, the ALJ noted that Sherrod is able to do chores, watch movies, and take walks.  The ALJ also noted that Sherrod was able to maintain social relationships, while also demonstrating an ability to concentrate at the hearing.  Tr. 15.

At step four, the ALJ concluded that Sherrod has the residual functional capacity to perform the exertional demands of a full range of light work as defined in 20 CFR 404.1567(b).  Specifically, the ALJ concluded that Sherrod is able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an eight hour work day; sit for 6 hours in an eight hour work day; and perform unlimited pushing a pulling within the weight restriction given.  The ALJ also concluded that Sherrod was capable of

4

performing jobs that require occasional use of ladders, ropes, or scaffolds; that require only occasional use of ramps or stairs; and that require occasional balancing, stooping, kneeling, crouching, and/or crowing. Due to his anxiety, Sherrod was deemed capable of only unskilled work. Tr. 16.

The ALJ based her step four conclusion on many factors. She noted that Sherrod suffered from pain in his back as a result of his condition; however, she pointed out that x-rays of his lumbar spine and cervical spine were normal. The ALJ similarly explained that a 2010 MRI of Sherrod's cervical spine revealed no abnormalities. The ALJ also relied on a report from a state agency medical consultant concluding that Sherrod possessed an RFC for light work. Additionally, the ALJ pointed out that a state medical consultant concluded that Sherrod's mental impairment was not severe. Tr. 18. The ALJ's decision also references a function report in which Sherrod explains that he is able to, among other things, do laundry, clean his room, make his bed, and take care of other personal needs. The ALJ further noted that treatment for Sherrod's impairments has been conservative; most notably, Sherrod had not required any surgery for his back disorder. Tr. 19.

At step five, the ALJ first concluded that Sherrod is unable to perform any past relevant work. Tr. 19. However, the ALJ then went on to conclude that there are jobs that exist in significant numbers in the national economy that Sherrod can perform. In reaching this conclusion, the ALJ matched Sherrod's age, education, work experience, as well as an RFC for the full range of light work, with the Medical Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. Tr. 20. Because there exists a significant number of jobs in the national economy that Sherrod can perform, the ALJ concluded that Sherrod was not disabled. Tr. 20.

### III. DISCUSSION

Sherrod argues that the ALJ's decision is not supported by substantial evidence. Specifically, he argues that the ALJ erred in (1) declining to find that his impairments met or medically equaled any of the listed impairments at step 2; (2) failing to account for certain types of evidence at step four; and (3) failing to elicit testimony from a vocational expert at step five.

#### a. Step 3

Sherrod argues that the ALJ's step three determination is not supported by substantial evidence. Specifically, he argues that his spine impairments meet or medically equal Listing 101.04. The Court disagrees.

To meet Listing 101.04, Sherrod must demonstrate a disorder of the spine resulting in a compromise of a nerve root or the spinal cord, coupled with

5

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test.

20 C.F.R. § 404, Subpart P, App'x 1, Listing 101.04.  In support of his position, Sherrod cites multiple parts of the record that reference nerve root compression in his back.  However, in the context of Listing 101.04, nerve root compression is only one half of the equation.  Notably, Sherrod does not point to a single piece of evidence indicating that his nerve root compression was coupled with motor loss accompanied by reflex loss.  *See Pallens v. Colvin*, No. 13-7350, 2015 WL 6502100, No. 13-7350 (D.N.J. Oct. 26, 2015) (Listing 101.04 not met where evidence of nerve root compression is not coupled with other required evidence).  And while Sherrod criticizes the ALJ for stating in conclusory fashion that Listing 101.04 does not apply, it is difficult to fathom what more the ALJ could have said considering that Sherrod himself cannot point to any evidence of motor loss accompanied by reflex loss.  *See Hernandez v. Commissioner of Social Sec.*, 198 Fed.Appx. 230, 235 (3d Cir. 2006).  Moreover, other portions of the decision reveal that the ALJ examined Sherrod's back impairment's in great detail, explaining why she accepted certain pieces of evidence while rejecting others.  *Id.  See also Klangwald v. Commissioner of Social Sec.*, 269 F.App'x 202, 204 (3d Cir. 2008).  The Court therefore concludes that the ALJ's step three analysis is supported by substantial evidence.

### b.  Step 4

Sherrod criticizes the ALJ's step four analysis on multiple fronts.  Sherrod first argues that the ALJ put too much emphasis on the fact that Sherrod received only conservative treatment for his back pain.  After reviewing the decision, however, it is apparent that the ALJ viewed Sherrod's conservative treatment as merely one factor when making her step four assessment.  In addition to noting Sherrod's conservative treatment, the ALJ also emphasized other evidence, including consultative examination results and the fact that Sherrod was able to perform other tasks of daily living.  *See, e.g., Dunson v. Commissioner Social Sec.*, 615 Fed.Appx. 65, 69 (3d Cir. 2015) (substantial evidence supported decision that partially relied on claimant's conservative treatment).  Second, Sherrod contends that his treatment caused him to suffer from various side effects, none of which were accounted for in the ALJ's decision.  However, as Defendant correctly notes, Sherrod does not point to any specific portions of the record that show any disabling side effects caused by his medication.  *See Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002) (side effects from medication are not to be viewed as disabling unless they present "serious functional limitations").  Third, Sherrod argues that the decision did not fully account for the evidence concerning severity of his back pain, including his own subjective complaints of pain.  The Court rejects this argument.  The ALJ duly noted that Sherrod suffered from back pain, but

also pointed out that Sherrod was able to perform various tasks and that certain diagnostic records revealed no significant abnormalities. In other words, while the ALJ considered Sherrod's subjective complaints of pain, she eventually concluded that other objective medical evidence undermined those complaints. *Santiago v. Commissioner of Social Sec.*, 138 Fed.Appx. 429, 430 (3d Cir. 2005) ("Contrary medical evidence can, of course, discredit a claimant's subjective claims of pain.") The Court therefore finds that the ALJ's step four determination is supported by substantial evidence.

### c. Step 5

Sherrod argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to elicit vocational expert testimony or consider evidence other than the Medical Vocational Guidelines. The Court agrees and will therefore vacate the ALJ's decision.

Where a claimant suffers from both exertional and nonexertional limitations, an ALJ cannot rely solely on the medical vocational guidelines or "grids." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Instead, the Third Circuit has stated in unequivocal terms that where a claimant's limitations are both exertional and nonexertional, the ALJ must also consult "testimony of a vocational expert or other similar evidence, such as a learned treatise." *Id*. at 273. While the Third Circuit has held that an ALJ may use specific social security rules (SSRs) as a substitute for vocational expert testimony, "it must be crystal clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005).

In addition to his exertional impairments, Sherrod was also found to have anxiety, which is a nonexertional impairment. *See, e.g., Brank v. Astrue*, 636 F.Supp.2d 335, 347 (D.Del. 2009). However, the ALJ did not take any vocational testimony or other evidence, and instead relied solely on the grids. See Tr. 20 ("Based upon a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical Vocational Rule 202.13 and 202.14.") While the ALJ did reference some SSRs, she did so in conclusory fashion; in no way did the ALJ provide "crystal clear" reasons for why any of the cited SSRs were probative as to how Sherrod's nonexertional impairments impacted the occupational base. *Allen*, 417 F.3d at 407.

Because the ALJ relied solely on the grids at step five, her decision at step five is not supported by substantial evidence. Consequently, the decision must be vacated and remanded for further proceedings. *See, e.g., Velez v. Colvin*, No.12-7592, 2013 WL 6840515, *14 (D.N.J. Dec. 23, 2013) (vacating and remanding where ALJ's step five analysis relied solely on grids despite plaintiff having both exertional and nonexertional limitations).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED AND REMANDED** for reconsideration consistent with the Court's opinion. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 13, 2015**